Johnnie C. DUNCAN, Appellant,

v.

Arthur E. SUMMERFIELD, Appellee.

No. 13867.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 16, 1957.

Decided Dec. 31, 1957.

Mr. Byron N. Scott, Washington, D. C., for appellant.

Mr. Donald B. MacGuineas, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Daub, Messrs. Oliver Gasch, U. S. Atty., and Paul A. Sweeney and Miss Beatrice M. Rosenhain, Attys., Dept. of Justice, were on the brief, for appellee.

Before EDGERTON, Chief Judge, and WILBUR K. MILLER and BAZELON, Circuit Judges.

EDGERTON, Chief Judge.

Plaintiff Duncan, a veteran's preference eligible with classified civil service status, was employed as a letter carrier in the Washington Post Office. He was dismissed for "security" reasons February 12, 1954 and filed this suit for reinstatement October 24, 1956. The defendant pleaded laches. The District Court granted his motion for summary judgment and the plaintiff appeals.

We think the court erred. Normally a dismissed government employee who waited two years and eight months before bringing suit would be guilty of laches, but in this case we think circumstances excuse the delay.

The plaintiff was dismissed "under the provisions of Executive Order 10450"[1] which was based on the Act of August 26, 1950.[2] But in Cole v. Young, 351 U.S. 536, 543, 76 S.Ct. 861, 100 L.Ed. 1396, the Supreme Court determined that this Act "relates only to those activities which are directly concerned with the

---

[1]. 18 Fed.Reg. 2489, as amended by Executive Order 10491, 18 Fed.Reg. 6583, 5 U.S.C.A. § 631 note; reprinted as an appendix in Cole v. Young, infra, 351 U.S. at page 558, 76 S.Ct. at page 874, 100 L.Ed. 1396.

[2]. 64 Stat. 476, 5 U.S.C.A. §§ 22–1, 22–3; reprinted as a footnote, 351 U.S. at page 538, 76 S.Ct. at page 864, in Cole v. Young, infra.

Nation's safety." That decision was rendered June 11, 1956. It reversed the District Court and this court. The District Court in October 1954, and this court in 1955, had held that the Act, supplemented by the Executive Order, applied to all government employees.[3] Duncan had discussed with his counsel the advisability of suing, but had been advised in the summer or late spring of 1954 to await the result of Cole's suit, which would be controlling. We think he acted reasonably in following this advice.

In the summer of 1955 Duncan learned that this court had decided against Cole and that Cole was seeking review in the Supreme Court. In June and again in August, 1956, after the Supreme Court ruled in favor of Cole, Duncan applied for reinstatement. The Postmaster General and the Civil Service Commission denied relief, and on September 17, 1956 the Chairman of the Civil Service Commission wrote to Duncan's counsel: "You may consider this notice to exhaust Mr. Duncan's administrative remedies before the Commission." This suit was filed between five and six weeks later.

■ In suits for reinstatement in government employment, as in equitable actions generally, laches has two elements, (1) unreasonable delay in prosecuting a claim and (2) resulting prejudice. Gurley v. Wilson, 99 U.S.App.D.C. 336, 239 F.2d 957. In the present case the second element is not clearly present, and the first element is absent.

(1) The Court of Claims and a number of other courts have held that a dismissed government employee acts reasonably, and is not guilty of laches, if he awaits the result of a suit by another employee who was dismissed in similar circumstances. The Court of Claims said in Kaufman v. United States: "We do not see how any good purpose could have been served from the standpoint of either the Government or the three persons affected by instituting three different suits and having the Government defend all three and the plaintiffs put to the expense of employing attorneys and possibly paying court costs in all three cases. It was natural that only one should file suit since it was apparent that whatever decision was rendered in that suit would apply to all three cases. This it seems to us fully explains the delay of plaintiff in not filing suit until after the final decision in the Borak case * * *." 1950, 93 F.Supp. 1019, 1021, 118 Ct.Cl. 91. In State ex rel. Prior v. Kansas City, Mo.1924, 261 S.W. 112, 114, the Supreme Court of Missouri said: "In the case before us the delay was 24 months in formally asking reinstatement and in bringing suit, but we think that the relator reasonably, under the circumstances, so refrained until the case of Rundberg, involving the same question, was finally decided. This suit was brought and demand for reinstatement made within about 4 or 5 months after we denied the writ of certiorari in the Rundberg Case." To similar effect are State ex rel. Kauffman v. Campbell, 1938, 59 Ohio App. 461, 18 N.E.2d 616; State ex rel. Exnicious v. Board of Com'rs, 1923, 153 La. 705, 96 So. 539; People ex rel. Tierney v. Scannell, 1899, 27 Misc. 662, 59 N.Y.S. 679; City of San Antonio v. Castillo, Tex.Civ.App.1956, 293 S.W.2d 691.

(2) If Duncan recovers back pay for work he did not perform and another man did, the government will be prejudiced by its wrongful discharge of Duncan, but not by his awaiting the result of another suit before filing his own. He gave no notice that he was doing so, but neither did the discharged employee in the Court of Claims case or in the Missouri case. We think this fact immaterial, not only on the question of reasonableness but also on the question of prejudice. The government says it was prejudiced because it "converted" a substitute carrier to regular carrier in place of Duncan. But it cannot reasonably be assumed that if a man dismissed for security reasons

---

3. Cole v. Young, D.C.D.C., 125 F.Supp. 284; Cole v. Young, 96 U.S.App.D.C. 379,

226 F.2d 337.

in 1954 had immediately sued, or given notice that he might sue, his job would have been kept open for him.[4]

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge, dissents.

Before EDGERTON, Chief Judge, and BAZELON and BASTIAN, Circuit Judges.

4. Counsel for appellant has submitted and the government has not questioned a list of other post office employees discharged in 1954 and 1955, who sued promptly, and were not offered reinstatement until after the Cole decision in 1956.